Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 98 C 7348 | DATE | 3/27/2000 |
| CASE TITLE | Somfy vs. Spring Window Fashions | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons set forth on the attached order, defendant Springs' motion for summary judgment for non-infringement is granted (67-1). Somfy's motions for summary judgment on the counterclaims (74-1; 75-1) are denied without prejudice. Defendant Springs is to advise the Court whether it intends to proceed with these counterclaims. Status hearing set to 4/13/00 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | 3·28·00 date docketed | |
| ✓ | Docketing to mail notices. | | | 90 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SOMFY, S.A.,

        Plaintiff,

v.

        Case No.   98 C 7348

SPRINGS WINDOW FASHIONS
DIVISION, INC.; DESIGN CRAFT
FABRIC, INC.; THE HOME
DEPORT, INC.; AND
SEARS ROEBUCK AND CO.

        Defendants.

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

After a *Markman* hearing and briefing on claim construction – the first step in a patent infringement analysis – the Court interpreted Claim 1 of Plaintiff Somfy's U.S. Patent No. 5, 328,113 in favor of the defendants. *See Somfy, S.A. v. Springs Window Fashions Division, Inc.*, 41 F. Supp. 2d 833 (N.D. Ill. 1999) (Castillo, J.). Before the Court is Defendant Springs' motion for summary judgment of non-infringement, which brings us to the second step of the analysis: the comparison of Springs' accused device to the construed claim. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996).

### Somfy's '113 Patent

Somfy's '113 patent is for a motorized window-blind device that prevents blinds from being raised or lowered from their bottoms in a lopsided way. On claim construction, the Court

90

found that the issue of infringement could be resolved by the interpretation of element F of Claim 1 of the '113 patent. *Somfy*, 41 F. Supp. 2d at 836. Element F describes an auxiliary drum means and a shoulder means, which prevents the blind's cord from winding beyond the auxiliary drum. The cord is guided onto the drum from the shoulder means in such a way as to cause the cord to be wound around the auxiliary drum adjacent to the shoulder means. The shoulder then pushes the cord down the winding drum. As taught by the '113 patent, this causes the cord to wind evenly.

As construed by the Court, the claim requires that the shoulder and the drum be in contact. *Id.* at 839 ("Because the enabling disclosure reveals a shoulder contacting the auxiliary drum and because the plain language of the claim fails to teach a broader interpretation, we find that the shoulder means must be in contact with the drum means."). In other words, the Somfy '113 patent requires a shoulder in contact with and rotating with an auxiliary drum.

In response to summary judgment, Somfy argues that this claim construction must be amended to include a shoulder means close to but not necessarily touching the drum. Somfy first argues that reconsideration is appropriate because the Court erroneously considered the accused device in construing Somfy's '113 patent. We disagree. The Court's reference to the Springs device was merely to point out that as construed, there was no literal infringement of the claim. *Somfy*, 41 F. Supp. 2d at 836 n.2, 839. For example, the Court compared the Springs device to U.S. Patent No. 5,725,040. Like the '040 patent, the Springs device uses stationary fingers spaced away from an auxiliary drum, which the Court found was not equivalent to the Somfy shoulder means. As such, the Court did not use the Springs device to construe Somfy's '113 patent; rather it likened the '040 patent and the Springs device in noting that the Springs device

2

could not literally infringe the '113 patent, while acknowledging that this analysis exceeded the scope of claim construction. *Id.*

Second, based on what it claims is new evidence and intervening case law, Somfy asks that we re-construe the '113 patent. Unless there are concrete reasons for reconsideration, our job is not to re-do claim construction; it is to determine whether the Springs device reads on the claim as construed by Judge Castillo. *Markman*, 52 F.3d at 976. "Litigants should not, on a motion for reconsideration, be permitted to attempt an extensive re-trial based on evidence which was manifestly available at the time of the hearing." *Gelco Builders & Burjay Construction Corp. v. United States*, 369 F.2d 992, 1000 n. 7 (Ct. Cl. 1966); *see also Quaker Alloy Casting Co. v. Gulfco Industries, Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988) (the Court's rulings are not "mere first drafts, subject to revision and reconsideration at a litigant's pleasure."). Rather, on a motion for reconsideration, litigants must typically show an intervening change in the law or that previously unavailable evidence is now available. *See, e.g., Bishop v. United States*, 26 Cl. Ct. 281, 286 (1992). Somfy (which is making its *second* request for reconsideration) cannot make either showing.

First, it has not explained how any intervening appellate decision has changed the result here. Somfy cites to *Johnson v. Worldwide Associates, Inc. v. Zebco Corp.*, 175 F.3d 985, 989-90 (Fed. Cir. 1999), for the general proposition that on claim construction a court must give full effect to the ordinary and accustomed meaning of claim terms, without explaining how the Court's construction of its claim erred in this regard, except to insinuate that the Court failed to give ordinary meaning to the word "on" in element F. Yet Somfy ignores the Court's finding that the parties submitted equally compelling dictionary definitions for the word "on" (definition

3

b: a "position on or in contact with"; definition c: a "position in close proximity with"). *Somfy*, 41 F. Supp. 2d at 837 (citing WEBSTERS NINTH COLLEGIATE DICTIONARY (Merian-Webster, Inc. 1990)). This ambiguous claim term therefore invited the Court to refer to other evidence. *Johnson*, 175 F.3d at 990.

Nor has Somfy supported its request for reconsideration with new evidence that was previously unavailable to it. Somfy says Judge Castillo did not consider a prior art patent, U.S. Patent No. 4,623,012. But Somfy did not argue this evidence to the Court even though this prior art was available to it. In fact, the '012 patent was referenced in Somfy's '113 patent. If the '012 patent were as significant as Somfy now claims, Somfy should have submitted this evidence on claim construction, and it had many opportunities to do so, including a previous motion for reconsideration that Judge Castillo denied. *See Peterson v. Lindner*, 765 F.2d 698, 704 (7th Cir. 1985) ("a district judge should carefully consider the propriety of re-examining a prior ruling of another district judge in the same case, [unless] good reasons for doing so appear (such as new evidence or controlling law, or clear error) . . ."); *Quaker Alloy*, 123 F.R.D. at 288 (new evidence must have been previously unavailable); *Centracchio v. Continental Illinois National Bank and Trust Company of Chicago*, No. 83 C 9614, 1986 WL 5765, at *4 (N.D. Ill. May 9, 1986) ("Motions for reconsideration are intended to serve a very limited purpose: to correct manifest errors of law or fact or to present newly discovered evidence."). *Cf. United States v. 47 West 644 Route 38, Maple Park, Illinois*, 190 F.3d 781, 783 (7th Cir. 1999) ("A party may not introduce evidence or make arguments in a Rule 59 motion that could or should have been presented to the court prior to judgment."), *cert. denied sub nom.*, *Accardi v. United States*, __ S.Ct. __, No. 99-1286, 2000 WL 177316 (U.S. Mar. 6, 2000).

Even if we did consider Somfy's "new" evidence, it would not change the Court's earlier construction of the '113 patent. The Court based its claim construction, in part, on the fact that the '113 patent did not disclose a shoulder spaced away from the drum, and on the inventor's testimony that the '113 patent does not teach such a design. *Somfy*, 41 F. Supp. 2d at 838. Somfy now claims that there was no reason for it to re-describe (or to teach) this structure in its patent because a patent does not teach what is already known in the art: the '012 patent depicts a space between a non-rotating "holding device" (shoulder) and a "capstan" (auxiliary drum). Thus, Somfy argues, the Court construed its patent too narrowly. We disagree. In fact, Somfy's distinction supports construction of the Somfy patent as is. Somfy says the '012 patent differs because the shoulder device does not "push the cord down" the drum. Pltf. Surreply at 2-3. Because it does not perform this function, the '012 patent's shoulder need not contact the drum. Thus, the '012 patent's drum device is not "limited by" a shoulder. Indeed, the '012 patent's abstract does not describe a drum "limited by" a shoulder device; Somfy's patent does. We therefore decline to reconsider Judge Castillo's construction that the Somfy '113 patent requires a shoulder in contact with an auxiliary drum.

### Springs' Accused Device

There is no dispute over the structure of Springs' accused device. Unlike the Somfy '113 patent, the Springs device does not have a rotating shoulder structure; instead, it uses a fixed set of "fingers" to block the cord, creating a gap, so that each new cord winding is guided directly onto the drum. The fingers do not rotate with the drum and, most importantly, they do not contact the drum. Springs believes that its design is more effective because the space between the upper and lower fingers and the drum reduces unwanted friction.

With the claims construed, we now turn to the second step of the patent infringement analysis: whether the accused Springs device infringes on Somfy's '113 patent either literally or under the doctrine of equivalents.

## Literal Infringement

Literal infringement requires that the accused device contain every limitation in the asserted claim. If one limit is missing or not met, there is no literal infringement. *Cortland Line Co. v. The Orvis Co.*, 203 F.3d 1351, 1357 (Fed. Cir. 2000). Judge Castillo determined that element F was largely written in a means-plus-function format and therefore subject to the requirements of 35 U.S.C. §112, ¶6, which enables claims to be drafted by reciting a function to be performed rather than a definite structure.[1] *Somfy*, 41 F. Supp. 2d at 836-37. Such a claim is construed "to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. §112, ¶6. With a means-plus-function claim, the accused device literally infringes if it incorporates the identical or equivalent structure disclosed in the specification and performs the identical function recited in the claim. *WMS Gaming Inc. v. International Game Technology*, 184 F.3d 1339, 1350 (Fed. Cir. 1999); *Odetics, Inc. v. Storage Technology Corp.*, 185 F.3d 1259, 1266-67 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts,*

---

[1] Somfy argues in passing that §112, ¶6 does not apply because the phrase "on one end" in element F is not a means-plus-function phrase but rather connecting language for other means-plus-function language in element F. Pltf. Opp. at 10-11. We disagree. Element F requires "a shoulder means on one end of said auxiliary drum means for moving successive cord windings axially away from the shoulder means and onto the auxiliary drum means as the cord windings are formed." The word "means" appears in combination with a function ("for moving successive cord windings . . ."). It is therefore presumed to be a means-plus-function claim, and Judge Castillo appropriately applied 35 U.S.C. §112, ¶6. *E.g., Cortland*, 203 F.3d at 1357. Moreover, Somfy previously conceded that this is a means-plus function claim. Pltf. Reply at 11-12.

6

*Inc. v. Cardinal Industries, Inc.*, 145 F.3d 1303, 1308 (Fed. Cir. 1998).

In light of the Court's construction of Somfy's '113 patent, we conclude that the Springs device does not incorporate identical structure. The '113 patent requires contact between a shoulder means and an auxiliary drum means – a requirement the Springs device does not satisfy, as it utilizes stationary fingers that are spaced away from the auxiliary drum. Because the structures of the two devices are not identical, the issue of literal infringement turns on structural equivalence. *WMS Gaming*, 184 F.3d at 1350-51.

The test for structural equivalence of a §112, ¶6 claim is whether the differences between the accused device and each element of the patent claim are insubstantial. *Id.*; *Cortland*, 203 F.3d at 1359. Where the "assertedly equivalent structure performs the claimed function in substantially the same way to achieve substantially the same result," the differences between the two devices are insubstantial. *Odetics*, 185 F.3d at 1267. If there are insubstantial differences in structure, that is, structural equivalence, the accused device will literally infringe if it performs the identical function recited in the claim. *WMS Gaming*, 184 F.3d at 1350-51; *Cortland*, 203 F.3d at 1359; *Chiuminatta*, 145 F.3d at 1308. We must therefore first determine whether the Springs device has structure equivalent to the limitation in the claim of a shoulder means on one end of the auxiliary drum. Because this limitation requires contact between the shoulder and drum, the Springs device, with its stationary fingers off-set from the drum, is not structurally equivalent. Somfy has presented no evidence that would suggest structural equivalency between the '113 patent and Springs' device. Instead, it repeatedly implores that we re-construe its '113 patent to require only a shoulder means close to but not necessarily touching the drum. However, the '113 patent requires contact between a shoulder means and an auxiliary drum

7

means – a requirement the Springs device clearly does not satisfy.

Even if Springs' device were structurally equivalent to Somfy's, it does not perform the claimed function of moving successive cord windings in substantially the same way. With the Somfy '113 patent, a shoulder device guides cord windings around a drum and pushes each subsequent cord winding down the drum. The Springs device does not work that way. Fixed "fingers" spaced *away* from the drum blocks the cord and creates a gap so that each new cord winding is evenly spaced and guided directly onto the drum. Because Springs' motor is battery operated and weaker than most, Springs claims that its device was designed to reduce friction caused by a design like Somfy's.

Because there are no issues of fact on this score, and because no reasonable jury could find Springs' device equivalent to the claims in the Somfy patent within the meaning of §112, ¶6, summary judgment is appropriate. *E.g., Cortland*, 203 F.3d at 1359 (affirming grant of summary judgment of no literal infringement and finding no structural equivalence where the "means for connecting, as correctly construed, are literally absent from the [accused device]."); *Chiuminatta*, 145 F.3d at 1309 (reversing summary judgment of infringement where "no reasonable jury could have found that the accused device has an equivalent to the disclosed structure. . . .").

### Infringement Under Doctrine of Equivalents

Somfy also contends that Springs' device infringes the '113 patent under the doctrine of equivalents. A device that does not literally infringe a claim may nevertheless infringe under the doctrine of equivalents if the differences between the accused device and the claim are insubstantial. *WMS Gaming*, 184 F.3d at 1352. Equivalence is shown by evidence that the accused device contains an element that is not "substantially different" from the claim element,

8

or that the claim element and the accused component "perform substantially the same function in substantially the same way to achieve substantially the same result." *Kraft Foods, Inc. v. International Trading Co.*, 203 F.3d 1362, 1371 (Fed. Cir. 2000) (internal quotation and citation omitted). If the function, way, or result of the substitute structure is substantially different form that described in the claim, equivalence is not established. *Odetics*, 185 F.3d at 1267; *see also Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 39-40 (1997).

This is similar, though not identical, to the test for structural equivalence under §112, ¶6. *See Odetics*, 185 F.3d at 1267. Under §112, ¶6, functional *identity* is required; the same is not true with the doctrine of equivalents. *Id.* Thus, an accused device may infringe under the doctrine of equivalents even if it is not equivalent within the meaning of §112, ¶6. *See Chiuminatta*, 145 F.3d at 1311; *Odetics*, 185 F.3d at 1267 (test under §112, ¶6 is narrower than that under doctrine of equivalents).

Even though the standards are somewhat different, our conclusion that the Springs device does not meet the §112, ¶6 equivalence test arguably precludes a finding that the device infringes under the doctrine of equivalents. *See Chiuminatta*, 145 F.3d at 1310 (finding of lack of equivalent structure under §112, ¶6 may preclude finding of equivalence under doctrine of equivalents); *Dawn Equipment Co v. Kentucky Farms, Inc.*, 140 F.3d 1009, 1022 (Fed. Cir. 1998); *WMS Gaming*, 184 F.3d at 1353 (where finding of non-equivalence under §112, ¶6 was based on fact that devices did not perform identical function rather than on lack of structural equivalence, accused device still had to be examined under doctrine of equivalents). One way or another, however, our analysis of the structure under the doctrine of equivalents leads to the same result as under §112, ¶6: the Springs device is substantially different from the claim limitation in

9

the '113 patent. In addition, for the reasons previously described, Springs' device does not work in "substantially the same way" as described in the '113 patent.

"Although equivalence is a factual matter normally reserved for a fact-finder, the trial court should grant summary judgment in any case where no reasonable fact finder could find equivalence." *Sage Products, Inc. v. Devon Industries, Inc.*, 126 F.3d 1420, 1423 (Fed. Cir. 1997). *Accord, Warner-Jenkinson*, 520 U.S. at 39 n.8 (district court may grant summary judgment where no reasonable jury could determine two elements to be equivalent); *Kraft*, 203 F.3d at 1371; *cf. Cortland*, 203 F.3d at 1359.

## Conclusion

For the reasons set forth above, defendant Springs' motion for summary judgment for non-infringement is granted [67-1]. Somfy has moved for summary judgment on Spring's counterclaims. At a status hearing last July, however, Springs' counsel suggested that a ruling in its favor on the issue of infringement might effectively render its counterclaims moot. For this reason, we deny without prejudice Somfy's motions for summary judgment on the counterclaims [74-1; 75-1] and request that Springs advise the Court whether it intends to proceed with these counterclaims. The case is set for a status hearing for this purpose on April 13, 2000 at 9:30 a.m.

Dated: March 27, 2000

*[signature]*
MATTHEW F. KENNELLY
United States District Judge

10